NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 17-1150

————————

BRIAN J. STONE;
ELLEN A. STONE,
Appellants
v.

TODD A. MARTIN;
JASON DUNLAP

————————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 3-15-cv-01632)
District Judge: Honorable Malachy E. Mannion

————————

Argued on September 19, 2017

Before: AMBRO, KRAUSE, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: November 22, 2017)

Brian J. Stone, Esquire     [Argued]
21509 Island Club Road
Tilghman, MD 21671
     *Counsel for Appellants*

Gerard J. Geiger, Esquire   [Argued]
Robert J. Kidwell, III, Esquire
Newman Williams Mishkin Corveleyn Wolfe & Fareri
712 Monroe Street
Stroudsburg, PA 18360
     *Counsel for Appellees*

_____

OPINION[*]

_____

AMBRO, Circuit Judge

Brian and Ellen Stone live on a 75-acre plot off Route 115 in Monroe County, Pennsylvania. The couple's home and Brian Stone's law office are on the plot though in separate buildings many yards apart. Neither the house nor the law office can be seen from public property. Both can be accessed by a long driveway from Route 115. The Stones' mailbox and a sign advertising the law office are at the entrance to the driveway, and it can be closed off by a locked gate. Signs posted along the driveway read "Keep Out" and state that the property is private.

On May 29, 2015, Monroe County Deputy Sheriff Jason Dunlap was tasked with serving on Ellen Stone a small claims notice of suit. He had until June 29, 2015, to complete service. Dunlap attempted to visit the Stones' residence on the mornings of June 8, June 11, and June 16, 2015, but each time found the gate to the driveway locked. He left his card in the mailbox, but no one picked it up.[1] Around noon on June 17, finding the gate still locked and his card still in the mailbox, Dunlap parked his car, went around the locked gate on foot, and walked up the driveway toward the Stones' house.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The record does not reflect any other attempts by Dunlap to serve process on Ellen Stone, such as going to her usual place of business, calling her, or visiting the Stones' residence in the evening rather than the morning.

When he reached the end of the driveway, however, he turned away from the sidewalk that lead to the Stones' house and instead approached the detached law office building, where he saw a woman standing inside an open garage. He told the woman he was looking for Ellen Stone, and the reply was "You found me." Dunlap served Stone, at which point her husband, Brian Stone, approached and asked Dunlap to identify himself and explain why he was on their property. He briefly answered Brian Stone's questions and then left the way he came.

The Stones seek relief under 42 U.S.C. § 1983. They claim that Dunlap conducted an unreasonable search and seizure of their property. They contend also that Sheriff Todd Martin violated their Fourth Amendment rights by setting department policy that permitted Dunlap's conduct. They further assert Pennsylvania constitutional and state law violations against both defendants.

The District Court had original jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367(a). It granted summary judgment in favor of Dunlap and Martin on the Fourth Amendment claims, declined to exercise supplemental jurisdiction over the Pennsylvania constitutional and state law claims, and dismissed the case.

The Stones timely appealed. Our jurisdiction is under 28 U.S.C. § 1291. We review the District Court's summary judgment determination de novo, viewing the facts and drawing inferences in the light most favorable to the non-moving party. Doe v. Luzerne Cty., 660 F.3d 169, 174 (3d Cir. 2011). Our review of the District Court's

3

decision not to exercise supplemental jurisdiction is for abuse of discretion. See Hedges v. Musco, 204 F.3d 109, 124 (3d Cir. 2000).

A Fourth Amendment seizure occurs "when 'there is some meaningful interference with an individual's possessory interests in [her or his] property.'" Soldal v. Cook Cty., Ill., 506 U.S. 56, 61 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). For example, real property in Soldal was "seized" when a mobile home was wrenched from its water connections and hooked to a tractor. Id. at 58. Similarly, in Jacobsen DEA agents "seized" a package when they "assert[ed] dominion and control" over it (though the Court held the seizure to be reasonable in that case). 466 U.S. at 120-21. Dunlap's brief presence on the Stones' property and short conversation with the Stones did not approach the meaningful possessory interference contemplated by the Fourth Amendment. Hence there was no seizing of their property.

Nor did Dunlap conduct an impermissible search. A Fourth Amendment search occurs either when the Government violates an individual's reasonable expectation of privacy, see Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring), or "[w]hen 'the Government obtains information by physically intruding' on persons, houses, papers, or effects," Florida v. Jardines, 569 U.S. 1, 5 (2013). Under the latter physical-intrusion analysis, a search is (1) an effort to find something or obtain information coupled with (2) a trespass. United States v. Jones, 565 U.S. 400, 408 n.5 (2012). However, under either analysis "open fields" have no Fourth Amendment protection, see Oliver v. United States, 466 U.S. 170, 177 (1984), even if they are on private property, id. at 183-84.

4

The District Court held that the Stones' Fourth Amendment rights were not violated because "there is no indication that . . . Dunlap attempted to obtain any information or find something when he entered on the property." Stone v. Martin, No. CV 3:15-1632, 2016 WL 7404607, at *5 (M.D. Pa. Dec. 22, 2016). Even if we were to disagree with this statement, there was no Fourth Amendment violation because Dunlap did not intrude on a protected area or privacy interest. Although he entered onto the Stones' private property without permission, it is well established that "[t]he law of trespass . . . forbids intrusions upon land that the Fourth Amendment would not proscribe." Oliver, 466 U.S. at 183. In United States v. Dunn, 480 U.S. 294, 301 (1987), the Supreme Court set out a nonexclusive, four-factor test to determine whether an area falls within a home's curtilage[2]—which enjoys Fourth Amendment protection "as part of the home itself," Jardines, 569 U.S. at 6—or is instead an unprotected open field.

The first factor, "the proximity of the area claimed to be curtilage to the home," Dunn, 480 U.S. at 301, cuts against the Stones. The detached law office building that Dunlap approached was many yards away from the Stones' house. The second factor, "whether the area is included within an enclosure surrounding the home," id., also goes against the Stones. There is no enclosure surrounding the Stones' house itself.[3]

---

[2] The "curtilage" is "the land immediately surrounding and associated with the home." Oliver, 466 U.S. at 180. "This area around the home is 'intimately linked to the home, both physically and psychologically,' and is where 'privacy expectations are most heightened.'" Jardines, 569 U.S. at 7 (quoting California v. Ciraolo, 476 U.S. 207, 213 (1986)).

[3] Neither the wooded area surrounding the Stones' property line nor the locked gate at the driveway affects our analysis of this factor. See Oliver, 466 U.S. at 174 (rejecting a

5

However, the sidewalk connecting the driveway to the house only begins where the parking area outside the law office ends. There are trees planted at the base of the sidewalk leading to the house between the law office and the house. The sidewalk layout and the trees create some physical separation between the two buildings. The third factor, "the nature of the uses to which the area is put," id. at 301, also weighs against the Stones. Because the detached building in this case was a law office, the building and the paved area leading up to it were not "being used for intimate activities of the home." Id. at 302. Finally, the fourth factor, "the steps taken by the resident to protect the area from observation" by passersby, id. at 301, is in the Stones' favor. Unlike in Dunn, the Stones' house and law office cannot be seen from public property, either through the surrounding woods or at the base of the driveway. Cf. id. at 303 ("[T]he various interior fences on respondent's property . . . were designed and constructed to corral livestock, not to prevent persons from observing what lay inside the enclosed areas."). The Stones also erected a lockable gate at the only entrance to their property and posted signs warning away trespassers.

However, given this case's factual similarities to Oliver and Dunn and because three of the four Dunn factors fail to support the Stones, we hold that Dunlap walked only through open fields. Because "the government's intrusion upon the open fields is not one

court's reasoning that a secluded area "bounded on all sides by woods, fences, and embankments [that] cannot be seen from any point of public access" is not an open field); Dunn, 480 U.S. at 297-98 (holding officers who "crossed over the [ranch's] perimeter fence and one interior fence" and two "barbed wire fence[s]" to approach a barn on the property had remained in open fields).

6

of those 'unreasonable searches' proscribed by the text of the Fourth Amendment," Oliver, 466 U.S. at 177, his trespass onto the Stones' property did not violate the Fourth Amendment. The District Court properly dismissed their Fourth Amendment claims on summary judgment.

In addition, the Court did not abuse its discretion in dismissing without prejudice the state constitutional and state law claims. It "may decline to exercise supplemental jurisdiction" over state law claims if it has "dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). It "must decline" to exercise supplemental jurisdiction in such circumstances "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.1995)). The Court here reasonably found that considerations of judicial economy, convenience, and fairness to the parties did not provide a justification for keeping this case in federal court.

We thus affirm.